## Benjamin C. Awe, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

### Gen. No. 5,676.

1. RAILROADS—*duty to repair fence.* Where a fence along a railroad's right of way has been found with the wires down at the place where skaters habitually leave the right of way to proceed to a frozen pond, and has been repaired by employees on numerous occasions, the company must know the damage is caused by the skaters, and to relieve itself from liability, as to animals straying on the track, it must either put the fence in repair each evening after the skating is over, or else prevent the damage to the fence by prosecutions, or by some other effective methods.

2. RAILROADS—*evidence as to cause of injury to animals.* Where there is a hole in a railroad's right of way fence, and there are tracks of three horses on the snow on the railroad track, and one horse is found dead on the track, another uninjured near the track, and a third horse is found in the owner's pasture with a broken leg, and is killed by order of a section foreman, a jury is warranted in finding that the horse with the broken leg was injured by the company, and was not injured by falling on a frozen pond in the pasture.

3. RAILROADS—*when liable for fire on right of way.* Evidence was conflicting as to where a fire started and as to its cause, but the fire when first seen was burning on a railroad's right of way, spreading to an adjoining pasture. There was dry grass and weeds on the right of way that had not been burned over that fall. A train of another company had passed over other tracks a short time before, but the wind was not blowing from that direction, and no person but a section hand of the defendant had passed along the track. *Held,* a verdict for the owner of the pasture should be sustained.

4. RAILROADS—*when liable for fire on right of way.* Evidence was conflicting as to the origin of a fire that when first seen was burning on a railroad's right of way, spreading to an adjoining pasture. The engine supposed to be responsible was equipped with the most approved spark arrestors. A heavy freight train passed a few minutes before the fire was seen and the engine was working hard. The right of way was grown up with grass and weeds and was burning that afternoon, and there was other evidence that the right of way had been burned over a few days before. *Held,* a verdict for the owner of the pasture should be sustained.

5. DAMAGES—*excessive*. Six dollars damages is not excessive where grass on two acres of pasture land is destroyed by a fire spreading from a railroad's right of way.

Action in the case. Appeal from the Circuit Court of De Kalb county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

FAISSLER & FULTON, for appellant; O. W. DYNES, of counsel.

GEORGE BROWN and H. S. EARLEY, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This is an action on the case brought by Benjamin C. Awe against the Chicago, Milwaukee & St. Paul Railway Company to recover damages for the alleged killing of three horses on January 13, 1908, and for injury by fire on October 17, 1908, to two pieces of pasture land owned by said Awe. The declaration contained four counts. The first and second counts charged that the railway company, regardless of the statute, did not maintain in good repair a fence along its right of way and adjacent to the lands of Awe, suitable and sufficient to prevent horses from going upon said right of way, and that by means of defects therein, certain horses, the property of said Awe, strayed upon the railroad and were killed. The third count alleged that the defendant, in violation of the statute, suffered large quantities of dry grass and weeds to accumulate and remain on its right of way; by means whereof fire thrown from a certain locomotive on said railroad ignited said dry grass and weeds and was communicated to the farm and pasture land of plaintiff and the grass growing thereon, whereby said pasture was burned over and the grass growing thereon was destroyed and wholly lost to plaintiff. The fourth count charged that, while a certain locomo-

tive of defendant was passing along said railroad by the pasture land of plaintiff, certain sparks and fire escaped and were thrown from said locomotive and set fire to and burned said pasture land, etc. Defendant pleaded the general issue. There was a jury trial and a verdict for plaintiff for $475 for the horses, $18 for the effect of the fire on the north side of the railroad, and $6 for the effect of the fire on the south side which they reformed into a verdict for $499, on which there was a judgment for plaintiff for $499, from which defendant below appeals.

Appellee owned farm lands west of the village of Genoa, in DeKalb county. The railroad of appellant runs east and west through the village of Genoa and the lands of appellee lie both north and south of its right of way. The railroad of the Illinois Central Railroad Company runs northwesterly and southeasterly, crossing the line of appellant near the village of Genoa, but all of appellee's land lies west of the Illinois Central. During the months of November and December, 1907, and January, 1908, appellee placed some horses on his land south of appellant's right of way for winter pasture and during the night following Sunday, January 12, 1908, some of said horses strayed upon the railroad right of way and track. The next morning two of them were found dead, one was found in appellee's pasture with its leg broken and it was put to death thereafter, and a fourth horse was found on the right of way uninjured. It is the claim of appellee that the horses went upon the right of way through a breach in the fence which appellant in the exercise of due care should have found and which, under the statute, it was required to keep in repair, and that the death of the horses was due to the failure of appellant to obey the statute in that respect.

The evidence shows that there was a large pond in appellee's pasture land, south of appellant's right of way, and that during the winter months many persons from the village of Genoa were accustomed to skate

thereon. It had become the habit of such skaters to walk along the right of way of appellant from the village of Genoa until a point was reached opposite the pond in appellee's land, when they left the right of way and proceeded, through the fence, to the pond. The evidence shows that these skaters made an opening in the fence by fastening the second wire from the top to the top wire and the third wire from the top to the fourth one, thus spreading the wires; and that at times the fence had been found with the wires entirely down at the particular place where skaters were in the habit of leaving the right of way, and that it had been repaired on numerous occasions by the section men and also, on at least two occasions, by appellee himself. On Friday, Saturday and Sunday before the injury complained of, the wires of this fence were found by the section men out of repair, and they repaired said wires after a fashion. On Monday morning the wires were found down again and the horses on the right of way, as heretofore described. The important question is whether appellant had done enough towards keeping up a suitable fence along this pasture to constitute compliance with the statute and therefore to relieve it from liability for the killing of these horses. Clearly, if the fence had been broken, or cut, as is claimed by appellant, for the first time on the afternoon or evening of January 12, 1908, after the section men had been over the track, appellant would not be liable. But in this case, there was proof that there had been a series of almost daily depredations as to this fence, which the statute required appellant to maintain. The fact that the damage to the fence was always done at one particular point, and that the point most convenient for skaters on their way to the pond, makes it a reasonable inference that the damage was caused by such persons. At least, it became so probable that skaters were responsible that we conclude that the jury could reasonably find that appellant must be held to have known of it, and that it be-

came the duty of appellant, either to put the fence in repair each evening after the skating was over, or else to prevent the damage to the fence by prosecutions or by some other effective method. Appellant knew that damage was being done repeatedly to its fence at this particular place, and therefore appellant had only to watch at that place, both to ascertain just who was responsible for the damage, and also to keep the fence in repair. So far as is shown in the evidence, appellant had never made any objection to the use of its right of way as a means of reaching the skating pond in appellee's land, nor had any attempt been made by appellant to punish persons for interfering with its fence. No one had any right to be on appellant's right of way or to go through its fence, except its employees, and every other person so doing was a trespasser. The trespassing of such persons had become so frequent that the jury might reasonably find from the evidence that the company knew thereof and was responsible for any damage resulting from the condition in which they left the fence.

Appellant contends that there is no evidence to show that it is responsible for the injury to that horse which was found in the pasture with a broken leg; and appellant charges that the horse in question fell on the ice in the pond and broke its leg in that manner. We are unable to agree with appellant in this contention. There is evidence showing that there were tracks of three horses in the snow going east on the railroad track from the hole in the fence. As one of the dead horses was found considerably further west than the hole in the fence, the jury were warranted in finding that the three horses making those tracks were the one that was found dead at or near the bridge, the one that was found uninjured alongside of the right of way, and this one found in the pasture with a broken leg. If this horse had fallen on the ice and broken its leg in that manner, we doubt its ability afterwards to arise and get off from the ice. It would much more

likely be found on the ice. Appellant's section foreman ordered this horse killed, and he must have been satisfied that his employer was responsible for the injury to the horse or he would not have concerned himself about it. The section foreman would never have taken such steps with regard to this horse, if he had not been satisfied from his investigation that the animal had been injured on the company's right of way and had afterwards returned through the fence to its pasture. We are of the opinion that the jury were justified from the evidence in finding that appellant was responsible for the injury to this horse, as well as to the other animals.

In the forenoon of October 17, 1908, there was a fire in appellee's pasture south of the right of way of appellant, and about two acres of land were burned over. The evidence is conflicting as to where the fire started and as to the cause of it. Appellant contends that there is no evidence to show that it started on the right of way of appellant nor from any negligence on the part of appellant's employees but we find evidence tending to show that, when first seen, the fire was burning on the south side of appellant's right of way and that it went from there into the pasture. There is evidence that there was dry grass and weeds on both sides of the right of way clear down to the fence on both sides, and that the right of way had not been burned over that summer or fall. Appellant contends that, while there is nothing in the evidence to show how this fire started, there is evidence that the Illinois Central train passed there a short time before the fire was seen, and that the natural conclusion is that the fire was caused by sparks from the Illinois Central engine. The fire, when seen, was along the right of way of appellant and quite a ways from the right of way of the Illinois Central, and the direction of the wind, as testified to by appellant's employees, would seem to preclude the possibility of sparks or fire being carried from the Illinois Central right of way to this pasture. There is

no evidence of any person being along this track on the morning of October 17th, when this fire occurred, except the section hands of appellant, and this fire may have been caused through some carelessness on their part. Although the evidence is conflicting, yet the jury heard the witnesses and the presiding judge reviewed their action, and we do not feel warranted by the evidence in disturbing their conclusion. The amount awarded by the jury was six dollars for the damage done by the fire on the south side of the right of way and we do not think it was excessive.

On the afternoon of the same day there was another fire in appellee's pasture on the north side of appellant's right of way and from ten to twelve acres of grass were burned over and destroyed. The jury held that appellant was responsible for that damage and awarded appellee the sum of eighteen dollars therefor. Our remarks above about the other fire will apply to this one. The evidence was conflicting as to the origin of this second fire. Appellant contends that there was no evidence that it started on its right of way, and it introduced proof that the engine which was supposed to be responsible was equipped with the latest and best devices for spark arresting. On the other hand, we find that there was evidence that the fire was going north on the right of way towards the pasture when first seen. The wind was blowing so hard from the southwest that the five or six section men could not get the fire under control in the field. The evidence shows that a heavy freight train had passed west going up hill, just a few minutes before the fire was seen and that the engine was working hard. There was evidence that the right of way was grown up with weeds and grass and was burning that afternoon, and other evidence that the right of way had been burned over two or three days before. The jury evidently believed that the right of way was in a bad condition, that it was fired by appellant's engine, that that fire escaped to appellee's adjoining field, and that appellant is re-

sponsible for the damage to appellee's pasture. The presiding judge saw the witnesses and approved the verdict of the jury. The damages awarded for this, as well as for the other fire, were small. We do not feel warranted in disturbing the verdict.

Appellant assigns for error the rulings of the court upon certain instructions, but this question is not argued by appellant and is therefore waived.

The judgment is therefore affirmed.

*Affirmed.*